**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DAVID BERGMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>SOUTHWEST BANCORP INC., MARK W. FUNKE, RUSSELL W. TEUBNER, JAMES E. BERRY II, THOMAS D. BERRY, JOHN M. COHLMIA, DAVID S. CROCKETT, JR., STEVEN C. DAVIS, PATRICE DOUGLAS, JAMES M. JOHNSON, LARRY J. LANIE, JAMES M. MORRIS II, and KAYSE M. SHRUM, D.O.,<br><br>　　　　　　　　Defendants. | Case No. CIV-17-852-HE<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff David Bergman ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Southwest Bancorp Inc., ("Southwest" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Southwest, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. § 229.1015(b)(4) and 17 § C.F.R. 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between Southwest and Simmons First National Corporation ("Simmons").

1

2. On December 14, 2016, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive 0.3903 shares of Simmons common stock and $5.11 in cash for each share of Southwest stock they own (the "Merger Consideration"). As of August 3, 2017, the Merger Consideration reflected an implied value of $26.09 per share of Southwest common stock, a paltry 7% premium over the closing price of Southwest common stock of $24.30 on December 13, 2016 (the date immediately prior to the announcement of the Proposed Merger).

3. On July 24, 2017, in order to convince Southwest shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "S-4")[1] with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the S-4, they have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the S-4 incomplete and misleading.

5. In particular, the S-4 contains materially incomplete and misleading information concerning: (i) financial projections for the Company; (ii) the valuation analyses performed by the Company's financial advisor, Keefe, Bruyette & Woods, Inc. ("KBW"), in support of its fairness opinions; and (iii) the fees KBW earned from both Southwest and Simmons.

6. It is imperative that the material information that has been omitted from the S-4 is disclosed to the Company's shareholders prior to the forthcoming shareholder vote, so that they can properly exercise their corporate suffrage rights.

---

[1] The S-4 was filed by Simmons First National Corporation.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to Southwest shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Southwest maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

3

## **PARTIES**

11. Plaintiff is, and at all relevant times has been, an Southwest shareholder

12. Defendant Southwest is incorporated in Oklahoma and maintains its principal executive offices located at 608 South Main Street, Stillwater, Oklahoma 74074. Southwest's stock trades on the NASDAQ under the ticker symbol "OKSB."

13. Individual Defendant Mark W. Funke ("Funke") has served as a President, Chief Executive Officer and director of Southwest since October 2012.

14. Individual Defendant Russell W. Teubner ("Teubner") has served as a Chairman of the Board of Southwest since January 2013.

15. Individual Defendant Thomas D. Berry ("Berry") has served as a director of Southwest since 1981.

16. Individual Defendant James E. Berry II ("Berry II") has served as a director of Southwest since 1998.

17. Individual Defendant John M. Cohlmia ("Cohlmia") has served as a director of Southwest since 2006.

18. Individual Defendant David S. Crockett, Jr. ("Crockett") has served as a director of Southwest since 2006.

19. Individual Defendant Steven C. Davis ("Davis") has served as a director of Southwest since 2015.

20. Individual Defendant Patrice Douglas ("Douglas") has served as a director of Southwest since 2015.

21. Individual Defendant James M. Johnson ("Johnson") has served as a director of Southwest since 2006.

22. Individual Defendant Larry J. Lanie ("Lanie") has served as a director of Southwest since 2012.

23. Individual Defendant James M. Morris II ("Morris") has served as a director of Southwest since 2014.

24. Individual Defendant Kayse M. Shrum, D.O. ("Shrum") has served as a director of Southwest since 2016.

25. The Board and Southwest may collectively be referred to as the "Defendants."

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Southwest (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

27. This action is properly maintainable as a class action because:

a. The Class is so numerous that joinder of all members is impracticable. As of July 21, 2017, there were approximately 18,685,502 shares of Southwest common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public shareholders of Southwest will be ascertained through discovery;

b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

        i)     whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the S-4 in violation of Section 14(a) of the Exchange Act;

        ii)    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

        iii)   whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading S-4.

    c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

    d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

    e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

    f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

    g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**SUBSTANTIVE ALLEGATIONS**

I. **The Proposed Merger**

28. Southwest is a financial holding company that focuses on providing a range of commercial and consumer banking services, including commercial and consumer lending, deposit and investment services, specialized cash management, and other financial services and products. The Company operates through four segments: Oklahoma Banking, Texas Banking, Kansas Banking and Other Operations.[2]

29. On December 14, 2016, Southwest and Simmons announced the Proposed Merger in a joint press release, which states in relevant part:

> PINE BLUFF, Ark., Dec. 14, 2016 (GLOBE NEWSWIRE) -- Simmons First National Corporation (NASDAQ: SFNC) ("Simmons" or "Company") and Southwest Bancorp, Inc. (NASDAQ: OKSB) ("SBI") announced today that they have entered into a definitive agreement and plan of merger ("Agreement") under which Simmons will acquire all of the outstanding common stock of SBI in a transaction valued at approximately $564.4 million (based on the Company's common stock closing price as of December 13, 2016). SBI is headquartered in Stillwater, Oklahoma, and is the parent company of its wholly-owned bank subsidiary, Bank SNB ("SNB").
>
> "We are excited to welcome the customers and associates of Bank SNB to the Simmons family. This transaction provides Simmons with an incredible opportunity to enter new markets in new states – Oklahoma, Colorado, and Texas – and grow our operations in Kansas," said George A. Makris, Jr., Simmons' Chairman and CEO. "The leadership of Bank SNB, quarterbacked by Mark Funke, has been dedicated to building a brand known for excellence in customer service. They've been highly successful, and we look forward to their continued involvement in the combined organization. Mark will be the President of the new Southwest Division of Simmons Bank and will be responsible for the banking operations in Oklahoma, Texas, Colorado, and Kansas."
>
> SBI's Financial Highlights (as of September 30, 2016):
>
> * Assets:     $2.47 billion
> * Loans:      $1.87 billion
> * Deposits:   $1.95 billion

---

[2] http://www.reuters.com/finance/stocks/companyProfile?symbol=OKSB.OQ.

Case 5:17-cv-00852-HE   Document 1   Filed 08/09/17   Page 8 of 18

* Branches: 31

"We at Southwest Bancorp are thrilled about the merger of our company with Simmons," said Mark Funke, SBI's President and CEO. "After much consideration of our strategic options, it became clear that partnering with Simmons – a premier financial institution that still appreciates the advantages of the community banking model – presents the best long-term opportunity for our associates, customers, and shareholders alike. We're eager to experience all the benefits of the combined franchises."

Under the terms of the Agreement, each outstanding share of common stock and equivalents of SBI will be converted into the right to receive 0.3903 shares of the Company's common stock and $5.11 in cash, all subject to certain conditions and potential adjustments. Completion of the transaction is expected in the third quarter of 2017 and is subject to certain closing conditions, including approval by the shareholders of both SBI and the Company, as well as customary regulatory approvals. After closing, SNB is expected to continue operations as a separate bank subsidiary of Simmons for an interim period until it is merged into Simmons Bank.

30. The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth. Indeed, Southwest experienced net operating cash flow and interest income growth of 26.11% and 24.04% in 2015 and 2016, respectively. Recently, commenting on the Company's strong second quarter 2017 financials, Defendant Funke, President and CEO of the Company, stated: "We are pleased with the improvement in the second quarter's earnings. Our good loan growth boosted revenues while expenses remained flat."

31. In sum, it appears that Southwest is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the S-4, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II.     The Materially Incomplete and Misleading S-4

32.     On July 24, 2017, Defendants caused the S-4 to be filed with the SEC in connection with the Proposed Merger. The S-4 solicits the Company's shareholders to vote in favor of the Proposed Merger. Defendants were obligated to carefully review the S-4 before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the S-4 misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act. The S-4 also fails to disclose the compensation earned by the Company's financial advisor, KBW, in connection with prior services performed for both Southwest and Simmons, in violation of 17 C.F.R. § 229.1015(b)(4) and Section 14(a).

33.     The S-4 fails to provide material information concerning the Company's financial projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger. S-4, 84-85. The financial projections were also relied upon by KBW in rendering its fairness opinion. S-4, 89.

34.     Indeed, the S-4 states that in recommending the Proposed Merger, the Board took into consideration, among other things, "the estimated future operating results and financial position of Southwest, including consideration of prospects for improvement in those results and financial position in both the near and long term[.]" S-4, 84-85. However, the S-4 does not contain the financial projections prepared by Southwest's management.

35.     Similarly, the S-4 discloses that KBW reviewed and relied on the "financial and operating forecasts and projections of [Southwest] that were prepared by [Southwest] management and that were provided to KBW and used and relied upon by KBW at the direction of such management and with the consent of the [Board][.]" S-4, 89.

9

36.     The Board's recommendation that shareholders vote in favor of the Proposed Merger is false and/or misleading because the information that forms the basis for the Board's recommendation, including the Company's non-public data and other internal information regarding its future performance, is absent from the S-4. Absent the data on the Company's future performance, stockholders cannot weigh and gauge the Board's recommendation. This material information must be disclosed to stockholders prior to the shareholder vote on the Proposed Merger.

37.     Clearly, shareholders would find the Company's financial projections material since the Board and KBW relied heavily on the projections. The S-4 specifically discloses that the Board's unanimous recommendation that shareholders vote in favor the Proposed Merger was based, in part on the following:

- The [Southwest Board] considered a number of factors, including, among others, the following: … the [Southwest Board's] review of the financial and other terms of the [Merger Agreement], including the adequacy of the [Merger Consideration], not only in relation to the current market price of Southwest common stock, but also in relation to (i) the historical and present operating results and financial position of Southwest, and (ii) the estimated future operating results and financial position of Southwest, including consideration of prospects for improvement in those results and financial position in both the near and long term[.]

S-4, 84-85.

38.     The S-4 also omits certain key inputs necessary for shareholders to assess the valuation analyses performed by KBW in support of its fairness opinion, rendering the summaries of such analyses in the S-4 incomplete and misleading.

39.     With respect to KBW's Forecasted Pro Forma Financial Impact and Relative Contribution Analyses, the S-4 indicates that, in arriving to its conclusion in these analyses, KBW utilized the financial forecasts and projections of Southwest provided by Southwest management.

S-4, 98-99. The S-4, however, fails to disclose these assumptions, which form a critical basis of KBW's analyses and corresponding fairness opinion.

40. With respect to KBW's DCF Analysis, the S-4 fails to disclose the financial forecasts and projections relating to the net income and assets of Southwest, provided to KBW by Southwest management. The S-4 also fails to disclose: (i) the basis for KBW's assumption of discount rates ranging from 11.0% to 15.0%; (ii) the present value of the estimated excess cash flows that Southwest could generate over the period from June 30, 2016 through December 31, 2021 as a stand-alone company; and (iii) the present value of Southwest's implied terminal value at the end of such period. S-4, 99. These key inputs are material to Southwest shareholders, and their omission renders the summary of KBW's DCF Analysis incomplete and misleading.

41. Since none of the operating forecasts or projections referenced above are disclosed in the S-4, the credibility of KBW's fairness opinion is undermined. Thus, the content and substance of KBW's fairness opinion false and/or misleading, as the omission negatively impacts stockholders' ability to weigh and measure KBW's fairness opinion.

42. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id*. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of

> dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion <u>unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices</u>. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

43. The S-4 discloses that KBW provided investment banking and financial advisory services to both Southwest and Simmons in the two years preceding the date of KBW's fairness opinion, yet fails to disclose the amount of compensation earned from both Southwest and Simmons. It is imperative for stockholders to be able to understand what factors might influence a financial advisor's analytical efforts, and the omission of such information (i) violates 17 C.F.R. § 229.1015(b)(4) and, consequently, Section 14(a); and (ii) renders the vague reference to prior compensation earned by KBW incomplete and therefore misleading.

44. In sum, the omission of the above-referenced information renders statements in the S-4 materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act, 17 C.F.R. § 229.1015(b)(4) and Rule 14a-9 Promulgated Thereunder)**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

47. Item 1015(b)(4) of Regulation M-A requires financial advisors (such as KBW) to describe "any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the relationship between: (i) the outside party, its affiliates, and/or unaffiliated representative; and (iii) the subject company or its affiliates." 17 C.F.R. § 229.1015(b)(4).

48. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

49. A violation of Item 1015(b)(4) independently constitutes a violation of Section 14(a). Further, the omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

50. Defendants have issued the S-4 with the intention of soliciting shareholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the S-4, which fails to provide critical information regarding, amongst other things: (i) the

Company's financial projections, (ii) the valuation analyses performed by KBW in rendering its fairness opinion, and (iii) certain compensation earned by KBW from Southwest and Simmons.

51. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the S-4, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

52. The Individual Defendants knew or were negligent in not knowing that the S-4 is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the S-4 states that KBW reviewed and discussed its financial analyses with the Board, and further states that the Board considered both the financial analyses provided by KBW as well as its fairness opinion and the assumptions made and matters considered in connection therewith.

53. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review KBW's analyses in connection with their receipt of the fairness opinion, question KBW as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the S-4 and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

54. The Individual Defendants were, at the very least, negligent in preparing and reviewing the S-4. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the S-4 or failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

55. Southwest is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the S-4.

56. The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

57. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

58. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59. The Individual Defendants acted as controlling persons of Southwest within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Southwest, and participation in and/or awareness of the Company's

15

operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

62. In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

65. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the S-4;

C. Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 9, 2017

                                                                  Respectfully submitted,

                                                                  **JONES GOTCHER**

                                                                   */s/ C. Michael Copeland*
                                                                   C. Michael Copeland, OBA # 13261
                                                                   Jack L. Brown, OBA # 10742
                                                                   3800 First Place Tower
                                                                   15 East Fifth Street
                                                                   Tulsa, OK 74103-4309
                                                                   Telephone: (918) 581-8200

**OF COUNSEL:**
                                                                   Email: jbrown@jonesgotcher.com
                                                                   Email: mcopeland@jonesgotcher.com

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.                                          *Counsel for Plaintiff*
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*